1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT FOR THE**

8

**EASTERN DISTRICT OF CALIFORNIA**

9

| | | |
|---|---|---|
| 10 | DAN TANKERSLEY, EDWARD WARKENTINE, ) | CIV- F-03-6438 AWI DLB |
| 11 | ) | **ORDER ON DEFENDANTS'** |
| | Plaintiffs, ) | **MOTION FOR SUMMARY** |
| 12 | ) | **JUDGMENT OR SUMMARY** |
| | v. ) | **ADJUDICATION AND ORDER** |
| 13 | ) | **TO SHOW CAUSE** |
| | DOS PALOS CITY POLICE ) | **REGARDING THE RIPENESS** |
| 14 | DEPARTMENT, OFFICER BARRY ) | **OF COUNT 3 OF PLAINTIFFS'** |
| | MANN, OFFICER BRIAN NUNES, and ) | **COMPLAINT AND THE** |
| 15 | DOES 1-25, ) | **DISMISSAL OF OFFICER** |
| | ) | **NUNES AND DOE** |
| 16 | Defendants. ) | **DEFENDANTS (HEARING** |
| | ) | **SET FOR MAY 27, 2005, AT** |
| 17 | | **8:30 a.m.)** |

18
19
20
21
22

   This is a civil rights case brought by Dan Tankersley and Ed Warkentine ("Plaintiffs")

23  against the Dos Palos City Police Department and Officer Barry Mann ("Defendants"), and

24  Officer Brian Nunes and doe defendants.  The suit arises from a traffic stop that eventually led to

25  an arrest for obstructing an officer in the performance of his duty.  Plaintiff Tankersley alleges in

26  the Second Amended Complaint ("SAC") that excessive force was used against him, including

27  the drawing of a weapon and the use of pepper spray.  Tankersley also makes claims for false

28  arrest, wrongful taking of personal property, refusal to provide treatment, and not being taken

1 | before a magistrate.  Plaintiffs specifically bring 11 counts against Defendants alleging violations

2 | of the Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendments.  Defendants now move for

3 | Judgment on the Pleadings against Plaintiff Warkentine and summary judgment or partial

4 | adjudication against Plaintiff Tankersley.  No opposition has been filed and Plaintiffs are

5 | appearing *pro per*.

6 | **FACTS**[1]

7 | On October 15, 2002, Plaintiffs were in a vehicle that was stopped by Dos Palos Police

8 | Officers Mann and Nunes for speeding.  See DUMF No. 1.  Plaintiff Tankersley immediately

9 | exited his pickup and approached the officers.  See DUMF No. 2.  Officer Mann directed

10 | Tankersley to return to the cab of his truck, but Tankersley did not comply.  See id.  Officer

11 | Mann then saw the passenger door of the truck open.  See Declaration of Barry Mann at ¶ 3.

12 | Mann pulled out his service weapon and instructed Tankersley to return to the truck, but

13 | Tankersley again refused.  See id.  Mann declares that Tankersley's failure to comply with

14 | Mann's directives gave rise to safety issues in Mann's mind.  See id.  Tankersley was arrested

15 | and personal property in his immediate possession was seized at the scene.  See DUMF No. 3.

16 | Tankersley's pickup was released to Warkentine at the scene.  See DUMF No. 4.  Plaintiff

17 | Tankersley was transported to the Dos Palos Police Department and then to the Merced County

18 | Jail where he was transferred to the custody of the Merced County Sheriff as Dos Palos does not

19 | have a jail.  See DUMF No. 5.  Tankersley's property was inventoried and put into evidence at

20 | the Dos Palos Police Department consistent with Department policy.  See DUMF No. 6.  Plaintiff

21 | Warkentine was not subject to any force.  See DUMF No. 7.  Plaintiff Warkentine did not have

22 | any personal property seized and not returned to him.  See DUMF No. 8.  Plaintiff Warkentine

23 | was allowed to drive the vehicle from the scene and go home.  See DUMF No. 9.  Plaintiff

24 | Warkentine was not subjected to any criminal prosecution.  See DUMF No. 10.

25 |

26 |

27 | [1]Unless otherwise noted, the following facts are taken from Defendant's undisputed facts, which are unopposed by Plaintiffs.  "DUMF" refers to Defendants's Undisputed Material Fact.

28 | 2

1      Defendant City had and has no policy, custom, or practice that allows property to be

2 seized unlawfully; property that is confiscated incident [sic] and which is not returned to an

3 arrestee upon bail or other release is retained in an evidence locker until receipt of an order for its

4 return or admission into evidence and the custody of the court. <u>See</u> DUMF No. 11.

5      A criminal complaint was filed by the Merced County District Attorney with the Merced

6 County Superior Court, as against Daniel Wesley Tankersley, Case No. DDP74373, charging

7 Tankersley with violations of California Penal Code § 148 and California Vehicle Code §§

8 22349(B), 24603(A), and 27600.[2] <u>See</u> DUMF No. 12.  The criminal case was dismissed on the

9 motion of the District Attorney on September 23, 2003. <u>See</u> DUMF No. 13.

10      Plaintiffs filed suit in this Court under 42 U.S.C. § 1983 against the City of Dos Palos,

11 Officers Barry Mann and Brian Nunes, and various doe defendants.  Defendants City of Dos

12 Palos and Officer Mann now move for judgment on the pleadings as against Plaintiff Warkentine

13 and for summary judgment as to Plaintiff Tankersley.[3]  Defendants argue that summary judgment

14 is appropriate because: (1) the City cannot be held vicariously liable for the alleged acts of its

15 officers and the Second Amended Complaint fails to allege a cognizable claim against the City;

16 (2) Officer Mann is entitled to qualified immunity; (3) Defendants did not violate Tankersley's

17 rights by not taking him before a magistrate; and (4) Tankersley's claims of excessive force are

18 subject only to Fourth Amendment analysis.  Plaintiffs have filed no response or opposition

19 whatsoever to Defendants' motions.

20

21

22      [2]Defendants move the Court to take judicial notice of the criminal complaint against Tankersley filed in the

23 Merced Superior Court; no objections to this request have been made.  A court shall take judicial notice of an appropriate fact if requested by a party and supplied with the necessary information. <u>See</u> Fed. R. Evid. 201.

24 Judicially noticed facts often involve matters of public record and proceedings in other courts, either State or Federal.  <u>See</u> <u>United States v. Southern Cal. Edison Co.</u>, 300 F.Supp.2d 964, 974 (E.D. Cal. 2004).  The Court grants

25 Defendants' motion for judicial notice of the criminal complaint.

26      [3]Defendant Nunes has not filed a motion for summary judgment.  In fact, a review of the Court's docket

27 shows that Officer Nunes has never filed an answer and was never served with the operative complaint (Plaintiffs' Second Amended Complaint).

28

1

## SUMMARY JUDGMENT STANDARD

2   Summary judgment is appropriate when it is demonstrated that there exists no genuine

3   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

4   Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Fortyune v.</u>

5   <u>American Multi-Cinema, Inc.</u>, 364 F.3d 1075, 1080 (9th Cir. 2004); <u>Jung v. FMC Corp.</u>, 755

6   F.2d 708, 710 (9th Cir. 1985).  Where summary judgment requires the court to apply law to

7   undisputed facts, it is a mixed question of law and fact.  <u>See</u> <u>Sousa v.Unilab Corp. Class II (Non-</u>

8   <u>Exempt) Members Group Benefit Plan</u>, 252 F. Supp.2d 1046, 1049 (E.D. Cal. 2002).  Where the

9   case turns on a mixed question of law and fact and the only dispute relates to the legal

10  significance of the undisputed facts, the controversy for trial collapses into a question of law that

11  is appropriate for disposition on summary judgment.  <u>See</u> <u>Union Sch. Dist. v. Smith</u>, 15 F.3d

12  1519, 1523 (9th Cir. 1994); <u>Sousa,</u> 252 F.Supp.2d at 1049.

13
> Under summary judgment practice, the moving party always bears the initial
> responsibility of informing the district court of the basis for its motion, and
14  identifying those portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any," which
15  it believes demonstrate the absence of a genuine issue of material fact.

16  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

17  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

18  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

19  file.'"  <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and

20  upon motion, against a party who fails to make a showing sufficient to establish the existence of

21  an element essential to that party's case, and on which that party will bear the burden of proof at

22  trial.  <u>Id.</u> at 322.  "[A] complete failure of proof concerning an essential element of the

23  nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u>  In such a

24  circumstance, summary judgment should be granted, "so long as whatever is before the district

25  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

26  satisfied."  <u>Id.</u> at 323.

27

28                                                  4

If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If the moving party meets it initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nolan v. Cleland, 686 F.2d 806, 812 (9th Cir. 1982); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A "genuine issue of material fact" arises when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248-49; Thrifty Oil, 322 F.3d at 1046.

In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Willis v. Pacific Maritime Ass'n, 244 F.3d 675, 682 (9th Cir. 2001). However, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; Hopper v. City of Pasco, 248 F.3d 1067, 1087 (9th Cir. 2001). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587; Mende v. Dun & Bradstreet, Inc., 650 F.2d 129, 132 (9th Cir. 1982).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Rule

56(c); Fortyune, 364 F.3d at 1079-80.  The court has the discretion in appropriate circumstances to consider materials that are not properly brought to the attention of the court, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact when the evidence is not set forth in the opposing papers with adequate references.  See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Sousa, 252 F. Supp.2d at 1049.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.

_____ *QUALIFIED IMMUNITY*

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   The "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made," and that it is "often difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation that he faces."  Estate of Ford v. Rameriz-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002).  Thus, qualified immunity "provides

1   ample protection to all but the plainly incompetent or those who knowingly violate the law."

2   KRL v. Moore, 384 F.3d 1105, 1116 (9th Cir. 2004); Estate of Ford, 301 F.3d at 1049.

3       The first step in evaluating qualified immunity is to determine whether the plaintiff has

4   shown conduct that violates his constitutional rights.  See Butler v. Elle, 281 F.3d 1014, 1021

5   (9th Cir. 2002).  That is, "taken in the light most favorable to the party asserting the injury, do the

6   facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533

7   U.S. 194, 201 (2001); Johnson v. County of Los Angeles, 340 F.3d 787, 792 (9th Cir. 2003).   If

8   "a violation could be made out on a favorable view of the parties' submissions, the next,

9   sequential step is to ask whether the right was clearly established."  Saucier, 533 U.S. at 201;

10   KRL, 384 F.3d at 1115; Johnson, 340 F.3d at 792.  Under the second sequential step, the court

11   determines: "(1) whether the violated right was clearly established, and (2) whether a reasonable

12   public official could have believed that the particular conduct at issue was lawful."  Butler, 281

13   F.3d at 1021; Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993); see also KRL, 384

14   F.3d at 1015.

15                           **CLAIMS ALLEGED IN THE SAC**

16   **Count 4:      Unlawful Detention and Arrest Without Probable Cause in Violation of the**
                   **Fourth, Fifth, Sixth, Seventh and Fourteenth Amendments**

17       Plaintiffs allege that at no time before the arrest of Plaintiffs did Defendants see or find

18   any evidence of probable cause that Plaintiffs had committed an offense or violation or crime

19   against the laws of California.  Tankersley alleges that he was arrested without probable cause or

20   a warrant.[4]

21       Defendants argue that Mann is entitled to qualified immunity because the facts known to

22

23   _____

24   [4]Plaintiffs allege in Count 4 that the Defendants "deprived the plaintiff of equal protection of law as
     proscribed by the fourteenth amendment of the United States Constitution.  By means of their **unlawful detention**

25   **and arrest without "Probable Cause"** in violation of the Forth, Fifth, Sixth, Seventh, and Fourteenth Amendment
     of the Constitution of the United States and 42 U.S.C. § 1983."  SAC at ¶ 42 (emphasis in original).  However, there

26   is no allegation that Defendants intentionally discriminated against Tankersley based on Tankersley's membership in
     an identifiable class.  See Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1134 (9th Cir. 2003).  Although

27   Count 4 states that Defendant deprived plaintiffs of "equal protection," it is clear that the Count 4 is merely
     complaining of a detention/arrest without probable cause.

28                                                    7

him at the time of arrest show at least that a reasonable officer in Mann's position would believe that he had probable cause to arrest Tankersley for interference with an officer in the conduct of his duty (Cal. Penal Code § 148(a)).[5]

*Discussion*

As an initial matter, nothing in the Fifth,[6] Sixth,[7] or Seventh[8] Amendment guarantees the right to be free from detentions or arrests, that is seizures, without probable cause.  See U.S. Const. Amends. V, VI, & VII.  Rather, claims regarding illegal searches and seizures of the person are governed by the Fourth Amendment.  See Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1029 (9th Cir. 2002).  Furthermore, where a claim can be analyzed under 'an explicit textual source' of rights in the Constitution, a court may not also assess the claim under another, 'more generalized,' source."  Id. Thus, the Fourth Amendment, and not substantive due process under the Fourteenth Amendment, governs claims regarding seizures of the person.  See id.; see

---

[5]The argument with respect to qualified immunity focuses on the arrest of Tankersley.  It does not address Tankersley's claims of excessive force (counts 6 and 7), claim of improper search (count 8), or claims of refusal to render treatment for the Pepper Spray (counts 5, 9, and 10).  However, false arrest claims are separate and distinct from claims of excessive force.  See Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004).  An arrest may be lawful in that it is supported by probable cause and still violate the Fourth Amendment if it was effectuated through the use of excessive force.  See Brier, 354 F.3d at 1065.

[6]The Fifth Amendment reads:
No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

[7]The Sixth Amendment reads:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

[8]The Seventh Amendment reads:
In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

8

1   also Graham v. Connor, 490 U.S. 386, 394-95 (1989).  The Fourth Amendment is the only basis

2   for Tankersley's claims in Count 4 of the SAC.

3         An unlawful traffic stop may give rise to a § 1983 violation.  See Haynie v. County of

4   Los Angeles, 339 F.3d 1071, 1075 (9th Cir. 2003).  "The Fourth Amendment requires only

5   reasonable suspicion in the context of investigative traffic stops."  Id.  "Reasonable suspicion

6   supported by articulable facts that criminal activity 'may be afoot' will sustain an investigative

7   stop."  Id. (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)).  An officer's inferences must

8   "be grounded in objective facts and be capable of rational explanation."  United States v. Colin,

9   314 F.3d 439, 442 (9th Cir. 2002).  Courts looks to the totality of the circumstances to "see

10  whether the officer had a 'particularized and objective basis' for suspecting criminal activity."

11  Id.  "Officers are encouraged to draw upon their own specialized training and experience in

12  assessing the 'totality of the circumstances.'"  Id.

13        "An arrest without probable cause violates the Fourth Amendment and gives rise to a

14  claim for damages under § 1983."  Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1988).

15  A warrantless arrest does not violate the Fourth Amendment, however, if the officers had

16  probable cause to believe the individual had committed or was about to commit a crime.  See

17  Picray v Sealock, 138 F.3d 767, 770 (9th Cir. 1998).  Probable cause is determined at the time

18  the arrest is made.  See Allen v. City of Portland, 73 F.3d 232, 236 (9th Cir. 1995).  Probable

19  cause is an objective inquiry and exists when, under the totality of the circumstances, the agents

20  know reasonably trustworthy information sufficient to warrant a prudent person in believing that

21  the accused had committed or was committing an offense.  See Beier v. City of Lewiston, 354

22  F.3d 1058, 1065 (9th Cir. 2004); Allen, 73 F.3d at 237.

23       A.     Initial Detention

24        The undisputed facts show that Plaintiffs' truck was stopped for speeding.  See DUMF

25  No. 1.  This fact is based on Defendant Mann's Declaration that, "Shortly before 7 p.m., [Mann]

26  observed a white flatbed pickup southbound on SR-33 through Dos Palos at a speed that

27

28                                   9

appeared in excess of the posted limits of 25, 45 and 55." Declaration of Barry Mann at ¶ 2.
Tankersley has filed nothing to contest DUMF No. 1 or anything that suggests that he was not, or
at least did not appear to be, speeding. The uncontested DUMF No.1 and the declaration of
Mann is sufficient to support a finding of reasonable suspicion that Tankersley was speeding.
Reasonable suspicion is all that is necessary to justify a traffic stop. See Haynie, 339 F.3d at
1075. Thus, the initial detention of Tankersley did not violate Tankersley's rights under the
Fourth Amendment.

   B.   Arrest for Traffic Violations and Penal Code § 148 – Interference/Obstruction

California Penal Code § 148, in relevant part, reads::

> Every person who willfully resists, delays, or obstructs any public officer, peace
> officer, . . ., in the discharge or attempt to discharge any duty of his or her office
> or employment, when no other punishment is prescribed, shall be punished by a
> fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county
> jail not to exceed one year, or by both that fine and imprisonment.

Cal. Penal Code § 148(a)(1).

   Here, the undisputed facts show that, after effectuating a stop of Tankersley's vehicle,
Tankersley immediately exited his vehicle and began walking towards Mann's police car. See
DUMF No. 2; Mann Declaration at ¶ 3. Mann ordered Tankersley to return to the cab of his
truck, but Tankersley did not comply. See DUMF No. 2; Mann Declaration at ¶ 3. The
uncontroverted declaration of Mann shows that after Tankersley refused to return to the truck,
Mann saw the passenger door of the pickup open. See Mann Declaration at ¶ 3. Mann then
pulled his service weapon and instructed Tankersley to return to the pickup, but Tankersley again
refused. See id. Tankersley's failure to comply with Mann's instructions "gave raise [sic] to
safety issues in [Mann's] mind." Id.

   This evidence shows that Mann was concerned about officer safety and that Tankersley
was not following instructions to remain in the cab of the truck. The evidence shows that Mann
believed that in order to continue to investigate the apparent traffic violation safely, it was
necessary for Tankersley to return to the cab of his truck. Tankersley's repeated failure to follow

10

instructions and return to the cab of his pickup could reasonably show conduct that delayed and/or obstructed Mann in the discharge of his duties, that is, investigation of a traffic violation. The uncontroverted evidence presented shows that, at the time of the arrest and under the totality of the circumstances, the facts known to Mann were sufficient to warrant a prudent person in believing that Tankersley had committed or was committing a violation of California Penal Code § 148(a). See Cal. Penal Code § 148(a); Beier, 354 F.3d at 1065; Allen, 73 F.3d at 237.  Because Mann had probable cause to believe that Tankersley violated Penal Code §148, the arrest of Tankersley did not violate the Fourth Amendment's prohibition against arrests without probable cause.  Summary judgment on this ground is appropriate.[9]

**Count 1:       Taking Tankersley's $60.00 and Pocket Knife in Violation of the Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendments**[10]

Tankersley contends that Defendants took $60.00 and a pocket knife from him in violation of the Fourth, Fifth, Sixth, Seventh and Fourteenth Amendments.

Defendants argue that there is no policy or custom of taking a suspect or arrestee's property, and that the $60.00 and the pocket knife were found and confiscated incident to arrest under *Chimel v. California*, 395 U.S. 752, 762-63 (1969).

Discussion

As an initial matter, the Sixth and Seventh Amendments do not provide a right to be free from unreasonable seizures or "takings" of property.  See U.S. Const. Ams. VI, VII.  However,

---

[9]Tankersley alleges in Count 11 that Defendants violated his right to be free from "false arrest."  See SAC at ¶ 48.  A claim of "false arrest" through 42 U.S.C. § 1983 is governed by the Fourth Amendment.  See Beier, 354 F.3d at 1064.  A claim of false arrest requires that no probable cause exists for that arrest.  See id.  Since Mann had probable cause to arrest for violation of California Penal Code § 148(a), as discussed above, summary judgment in favor of Defendants on Count 11 is also appropriate.

[10]Plaintiffs state that the count is based on the above amendments of the California and Federal Constitutions.  The Court construes Plaintiffs pleading as a claim under 42 U.S.C. § 1983 as that provision is specifically referenced in the first paragraph of the SAC. State law rights cannot form the basis for a 42 U.S.C. § 1983 lawsuit.  See Weiner v. San Diego County, 210 F.3d 1025, 1032 (9th Cir. 2000).  Additionally, there is no "Fourth, Fifth, Sixth, Seventh, or Fourteenth Amendments" to the California Constitution.  Accordingly, the Court will disregard Plaintiffs' claims under the California Constitution.

11

1  "when seizing property for criminal investigatory purposes, compliance with the Fourth

2  Amendment satisfies pre-deprivation procedural due process as well." Sanders v. City of San

3  Diego, 93 F.3d 1423, 1429 (9th Cir. 1996).  Thus, claims regarding illegal seizures of property in

4  the context of a criminal investigation are governed by the Fourth Amendment. See id.

5       Under *Chimel*, "When an arrest is made, it is reasonable for the arresting officer to search

6  the person arrested in order to remove any weapons that the latter might seek to use in order to

7  resist arrest or effect his escape. . . .  In addition, it is entirely reasonable for the arresting officer

8  to search for and seize any evidence on the arrestee's person in order to prevent its concealment

9  or destruction." Chimel, 395 U.S. at 762-63.  Here, the search of Tankersley was made incident

10  to the arrest of Tankersley for violation of California Penal Code § 148.  That search uncovered a

11  pocket knife.  There is no question that a knife is a weapon and the seizure of the knife was

12  appropriate under *Chimel*.[11]  See id.

13       However, the seizure of the money is different.  Money or currency is not a weapon.

14  Furthermore, Tankersley was arrested for violations of the Vehicle Code for traffic offenses and

15  for obstructing a police officer under Penal Code § 148.  Currency is not indicative of a violation

16  of the Vehicle Code nor Penal Code § 148.  The Court fails to see how the seizure of the money

17  could be considered seizure of evidence.  Defendants have argued no other justification for the

18  seizure of the $60.00.  Since money is not a weapon, and since Defendant has failed to explain

19  how the $60.00 is "evidence" given the conduct and crimes involved, summary judgment with

20  respect to the seizure of the $60.00 is inappropriate.  See Chimel, 395 U.S. at 762-63; see also

21  Thornton v. United States, 541 U.S. 615, 632 (2004) (Scalia, J., with Ginsburg, J., concurring)

22  (citing authority indicating that the right to seize is limited to relevant evidence against the

23  accused in light of the charge against him).

24

25

26  _____

27       [11]In the SAC, the knife is alleged to have a 1" blade.  See SAC at ¶ 16.  In deposition testimony, Tankersley
     testified that the knife was about 2" to 3".  See Exhibit A to Declaration of Todd Barsotti at 53:8-11.

28                                                        12

1  **Count 2:        Refusal to take Tankersley to a magistrate in violation of California Law**

2        In the complaint, Tankersley alleges that Defendants deprived him of a hearing and his

3  right to be taken before a magistrate as provided by California Law to determine the validity of

4  the charges against him.  Tankersley also alleges that this failure to take him to a magistrate

5  violated his Fourth, Fifth, and Sixth Amendment rights.

6        Defendants argue that summary judgment is appropriate because Tankersley was booked

7  and released without unnecessary delay, Tankersley was charged with a Penal Code violation that

8  makes Vehicle Code § 40302 inapplicable, and the facts as alleged by Plaintiffs do not show a

9  constitutional violation of the Constitution.

10       *Discussion*

11       The violation of California law that Tankersley appears to be relying on is California

12 Vehicle Code § 40302, which requires that individuals arrested for certain traffic violations be

13 taken before a magistrate without unnecessary delay.  Nevertheless, to "establish a civil rights

14 claim under 42 U.S.C. § 1983, a plaintiff must assert more than a violation of state tort law - he

15 must show that the defendant deprived him of an interest protected by the Constitution or federal

16 law."  Weiner v. San Diego County, 210 F.3d 1025, 1032 (9th Cir. 2000).  The violation of

17 California law is not actionable through § 1983.  See id.

18       Claims of improper confinement may implicate the Fifth Amendment's due process

19 clause or the Fourth Amendment.  See United States v. Salerno, 481 U.S. 739, 746 (1987);

20 Mackinney v. Nielsen, 69 F.3d 1002, 1009 (9th Cir. 1995); Hallstrom v. City of Garden City, 991

21 F.2d 1473, 1479 (9th Cir. 1993).  In cases where a plaintiff "has challenged the lawfulness of his

22 or her confinement prior to a judicial determination of probable cause for his or her warrantless

23 arrest, [courts] will use a Fourth Amendment analysis."[12]  Mackinney, 69 F.3d at 1009 (citing

24

25       [12]For this reason, Tankersley has no claim under the Sixth Amendment for the failure to take him before a
    magistrate in order to determine the validity of the charges, as alleged in Count 2 of the SAC.  The Sixth

26 Amendment provides for the right, *inter alia*, to trial by jury, to confront witnesses, to compulsory process of
    witnesses, and the guarantee of a "speedy trial."  See U.S. Const. Amend. VI.  There is no right under the Sixth

27 Amendment to have a magistrate pass on the validity of the charges following an arrest; rather, such a right is

28                                                    13

1   Gerstein v. Pugh, 420 U.S. 103, 111-14 (1975); Hallstrom, 991 F.2d at 1480, 1484).  Officers are

2   subject to a duty under the Fourth Amendment to ensure that one arrested without a warrant is

3   taken before a judicial officer "promptly after arrest" in order to determine probable cause, which

4   is a prerequisite to extended restraint or confinement.  See Gerstein, 420 U.S. at 114, 125-26;

5   Hallstrom, 991 F.2d at 1478.  However, when confinement lasts less than 48 hours, the plaintiff

6   bears the burden of establishing that a probable cause determination was delayed unreasonably.

7   See County of Riverside v. McLaughlin, 500 U.S. 44, 55-56 (1991); Mackinney, 69 F.3d at 1009;

8   Hallstrom, 991 F.2d at 1479-80.

9        The allegations in the SAC show that Tankersley was stopped around 6:00 p.m. on

10  October 15, 2002, and was released sometime after midnight on October 16, 2002.  This is less

11  than 48 hours.  See SAC at ¶¶ 3, 26.  Because the confinement was less than 48 hours, it was

12  Tankersley's burden to submit evidence that the delay was unreasonable.  Tankersley has failed

13  to do so.  Accordingly, summary judgment in favor of Defendants as to Count 2 of the SAC is

14  appropriate.

15  **Count 3         Taking of $60.00 and Pocket Knife Without Compliance Of Due Process**

16       Tankersley alleges that Defendants deprived him of his property without due process,

17  even though the criminal charges against him have been dropped and the criminal case against

18  him has been dismissed.  Tankersley argues that his property has been taken without compliance

19  of due-process and as part of a pattern, practice or custom of abusive takings practices.

20       Defendants argue that there is no allegation that Tankersley's property was taken for a

21  "public use."  Furthermore, Defendants argue that Tankersley's allegations of a practice or

22  custom of unlawful takings are essentially based on this incident, which is insufficient to

23  establish a custom or practice.

24       *Discussion*

25       A "policy" is "a deliberate choice to follow a course of action . . . made from among

26

27  governed by the Fourth Amendment.  See, e.g., Mackinney, 69 F.3d at 1009.

28                                    14

various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question," and may involve action or inaction.  Brass v. County of Los Angeles, 328 F.3d 1192, 1199 (9th Cir. 2003); Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 2002).  Furthermore, an improper custom or longstanding practice must rest on practices of "sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy;" isolated or sporadic incidents are insufficient to establish an improper custom or longstanding practice.  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996); see Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003); Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999).

Here, Tankersley was asked about the basis for his allegations of a pattern or practice of unlawful takings:

> Q:    So the allegation of a pattern and practice is based upon stories that you heard from your public defender and what other people told you?
>
> A:    Mostly what happened to me.

Exhibit A of the Declaration of Todd Barsotti at 86:6-9.  Defendants argue that this testimony shows that the basis for Tankersley's claim of a practice or custom is what happened to him. Furthermore, Officer Mann has declared that he is not aware of any custom or policy of unlawful taking in the years that he has worked for the Dos Palos police department, 2001 to 2005.  See Mann Declaration at ¶ 5-6.  Tankersley has not responded to this argument or submitted any evidence to clarify his own testimony or contradict Mann's declaration.  A single incident is insufficient to show a pattern, practice or custom.  See Webb, 330 F.3d at 1164; Christie, 176 F.3d at 1235; Trevino, 99 F.3d at 918.  Summary judgment with respect to Tankersley's claim of an unlawful taking against the City pursuant to an unlawful practice, pattern, or custom is appropriate.

With respect to the allegations of the taking of Tankersley's property, it appears that Tankersley's complaint is that his property was taken, but has yet to be returned despite the conclusion of the criminal charges and proceedings against him.  Defendants do not expressly

15

address this claim other than to argue that Tankersley has not asserted that the property has been

converted to public use.  The Court does not find this argument persuasive.  At summary

judgment, the issue is evidence submitted for consideration and the absence or presence of a

genuine dispute of material fact.  Here, the only argument on the takings issue is essentially a

challenge to the specificity of the allegations.  The declaration of Officer Mann states that he did

not find evidence that the Dos Palos police department ever received an order or request for the

return of the property.  See Mann Declaration at ¶ 8.  However, this portion of paragraph 8 is not

utilized in the motion for summary judgment.  Because there is insufficient argument and

evidence regarding the taking of Tankersley's $60.00 and pocket knife after the criminal charges

were dismissed, summary judgment is inappropriate.[13]

## Counts 5, 6, 7, 8, 9, and 10

Defendants do not specifically move for summary judgment on these claims.  Defendants

do, however, seek summary judgment that claims alleging excessive force are only governed by

the Fourth Amendment's prohibition against unreasonable seizure, and not by the Fifth, Sixth,

Seventh, or Fourteenth Amendments.

Defendants' point is well taken.  All claims that law enforcement officers used excessive

force, either deadly or non-deadly, in the course of an arrest, investigatory stop, or other seizure

of a citizen are to be analyzed under the Fourth Amendment and its standard of objective

reasonableness.  See Graham, 490 U.S. at 395; Drummund v. City of Anaheim, 343 F.3d 1052,

---

[13]The Court notes that, before a claim is ripe under the Takings Clause, the property owner must take two steps.  First, the property owner must obtain a final administrative decision regarding application of the regulations to the property at issue.  See Williamson County Reg'l Planning Commission v. Hamilton Bank, 473 U.S. 172, 186 (1985); Azul Pacifico, Inc. v. Los Angeles, 948 F.2d 575, 578-79 (1991).  Second, the property owner must avail himself of the state's judicial remedies in an effort to obtain just compensation.  Williamson , 473 U.S. at 195; Azul Pacifico, Inc., 948 F.2d at 579; Sinaloa Lake Owner's Ass'n v. City of Simi Valley, 882 F.2d 1398, 1402 (9th Cir.1989).  The Declaration of Officer Mann suggests that Tankersley has not requested that his property be returned.  Moreover, the property sheet indicates that the $60.00 and the pocket knife may be released to the owner.  See Exhibit B to the Mann Declaration.  However, there is no express argument that Tankersley has requested his property back through the appropriate channels.

1056 (9th Cir. 2003); <u>Robinson v. Solano County</u>, 278 F.3d 1007, 1009 (9th Cir. 2002) (en

banc); <u>see also</u> <u>Ramirez</u>, 298 F.3d at 1029.  Tankersley's allegations of excessive force in counts

6 and 7 are governed by the Fourth Amendment; to the extent he relies on the Fifth, Sixth,

Seventh, and Fourteenth Amendments, summary judgment is appropriate.[14]  <u>See</u> <u>County of</u>

<u>Sacramento v. Lewis</u>, 523 U.S. 833, 849 n.9 (2003); <u>Graham</u>, 490 U.S. at 395; <u>Ramirez</u>, 298

F.3d at 1029.

Additionally, as Defendants' correctly argue, there is nothing in the SAC that indicates

that Defendants violated Plaintiffs' Sixth Amendment or the Seventh Amendment rights.

Summary judgment is appropriate with respect to all of Tankersley's allegations of violations of

the Sixth and Seventh Amendments contained in the SAC.

## CLAIMS AGAINST THE CITY OF DOS PALOS

Municipalities are "persons" subject to suit under 42 U.S.C. § 1983.  <u>See</u> <u>Monell v. New</u>

<u>York City Dept. of Social Serv.</u>, 436 U.S. 658, 691 n.55 (1978); <u>Haugen v. Brosseau</u>, 351 F.3d

372, 393 (9th Cir. 2003); <u>Christie v. Iopa</u>, 176 F.3d 1231, 1234 (9th Cir. 1999).  However,

municipal liability under § 1983 cannot be based on a theory of *respondeat superior*.  <u>See</u>

<u>Haugen</u>, 351 F.3d at 393; <u>Webb v. Sloan</u>, 330 F.3d 1158, 1163-64 (9th Cir. 2003).  "Congress

intended to hold municipalities liable only when 'action pursuant to official municipal policy of

some nature caused a constitutional tort.'" <u>Webb</u>, 330 F.3d at 1164; <u>Christie</u>, 176 F.3d at 1235.

A municipality's liability under *Monell* may be premised on any of three theories: (1) that a

---

[14]Count 8 of the SAC alleges an improper search; this claim is governed by the Fourth Amendment.  <u>See</u> <u>Ramirez</u>, 298 F.3d at 1029.  However, Defendant does not address this count in the motion for summary judgment.

Additionally, counts 5, 9, and 10 complain of Defendants' conduct after Tankersley was sprayed with Pepper Spray.  Although dealing with different points in the chain of events, these three allegations essentially allege a refusal to administer medical treatment in a timely fashion, that is, Tankersley alleges that Defendants never treated or "washed away" the Pepper Spray despite repeated requests by Tankersley.  After the Pepper Spray was used and Tankersley was handcuffed and placed in the car, the seizure was accomplished.  Tankersley essentially became a pre-trial detainee and his claims are governed by the Fourteenth Amendment's due process provision.  <u>See</u> <u>County of Sacramento</u>, 523 U.S. at 849-50; <u>City of Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239, 243-44 (1983).

district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a "final policymaker." Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004); Webb, 330 F.3d at 1164.

Here, the only count in the SAC that indicates conduct pursuant to a policy, practice or custom is count 3. As discussed above, summary judgment in favor of the City is appropriate because there is insufficient evidence to show a policy, practice or custom. Tankersley names the City under each count of the SAC. Given the allegations in the SAC, there is no indication that the City, or its policies, caused the alleged violations of Tankersley's federal rights. The allegations in counts 1, 2, 4, 5, 6, 7, 8, 9, 10, and 11 do not allege conduct pursuant to a policy, practice or custom or that the conduct was by one of the City's "final policy makers." See Lytle, 382 F.3d at 982. Without these allegations, Plaintiffs are only alleging *respondeat superior*. See Gibson v. United States, 781 F.2d 1334, 1337-38 (9th Cir. 1986). Since municipalities like Dos Palos cannot be held liable under 42 U.S.C. §1983 on a *respondeat superior* theory, summary judgment in favor of Dos Palos on all remaining claims in the SAC is appropriate.[15] See Haugen, 351 F.3d at 393; Webb, 330 F.3d at 1163-64; Gibson, 781 f.2d at 1337-38.


**JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF WARKENTINE**

Defendants argue that the factual allegations in the SAC shows that Plaintiff Ed Warkentine suffered no injury or damages from violations of his civil rights. In relevant part, the Second Amended Complaint reads:

> An unidentified defendant was ordered by defendant Nunes to arrest and book plaintiff Ed Warkentine. The defendant conducting the arrest asked defendant Nunes, "What are we arresting him for?" Defendant Nunes replied, "Just book,

---

[15]Additionally, while "liability of municipalities does not turn on the liability of individual officers, it is contingent on a violation of constitutional rights." Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997); Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994). Because there was no constitutional violation with respect to counts 1, 2, and 4 of the SAC, Dos Palos cannot be held liable on those counts. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Sweaney, 119 F.3d at 1392.

I'll think of something by the time we get him to the station." Defendants arrested plaintiff Ed Warkentine and placed him in handcuffs removing him from the 1989 Ford Truck to one of the other Dos Palos City Police cars. Plaintiff Ed Warkentine was harassed to plead or admit to the possession of drugs and weapons. Defendants searched the 1989 Ford pickup truck numerous times. Defendant Nunes returned to plaintiff Ed Warkentine and stated, "O.K., we have found drug paraphernalia under your seat and if you admit we will go easy on you." Plaintiff Warkentine replied, "You are all a bunch of fucking liars."

Plaintiffs' Second Amended Complaint at ¶ 18. Defendants argue that the factual allegations, including paragraph 18, show that Warkentine was handcuffed, "arrested," but then released and allowed to drive Tankersley's truck home. See Motion for Summary Judgment at 6:24-26. Defendants argue that there are no allegations of physical force or violence, that Warkentine's property was taken away, or that he was criminally charged or prosecuted. See id. at 6:26-28. Defendants argue that, in short, "Warkentine seeks redress for being a witness to a traffic stop and the ensuing arrest of Plaintiff Tankersley, which is not enough to state a cause of action." Id. at 7:4-6.

### Rule 12(c) Standard

Under Federal Rule of Civil Procedure 12(c), "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). Judgment on the pleadings is appropriate when, taking everything in the pleadings as true, the moving party is entitled to judgment as a matter of law. See Honey v. Distelrath, 195 F.3d 531, 532 (9th Cir. 1999). The allegations of the nonmoving party must be accepted as true, while any allegations made by the moving party that have been denied are assumed to be false. See Hal Roach Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). The facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party. See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Gingo v. United States Dept. of Education, 149 F.Supp.2d 1195, 1201 (E.D. Cal. 2000).

### Discussion

Defendants are correct in part. There are no factual allegations involving excessive force

1   or the taking of property as to Warkentine.  However, viewing the allegations in the light most

2   favorable to the non-moving party, Warkentine, Paragraph 18 provides a factual basis for a

3   violation of the Fourth Amendment, specifically the right to be free from an unreasonable

4   seizure.

5        A seizure occurs when, "in view of all of the circumstances surrounding the incident, a

6   reasonable person would have believed that he was not free to leave."  See United States v.

7   Mendenhall, 446 U.S. 544, 554 (1980).  The allegation in paragraph 18 indicates that an officer

8   was directed to "arrest and book" Warkentine, that Warkentine was arrested, was placed in the

9   patrol car, and was handcuffed; this is sufficient to warrant a finding of a seizure and in particular

10  an arrest.  See Washington v. Lambert, 98 F.3d 1181, 1187 (9th Cir. 1996); United States v. Del

11  Vizo, 918 F.2d 821, 825 (9th Cir. 1990); United States v. Ricardo D., 912 F.2d 337, 340-42 (9th

12  Cir. 1990).

13       "An arrest without probable cause violates the Fourth Amendment and gives rise to a

14  claim for damages under § 1983."  Borunda, 885 F.2d at 1391.  A warrantless arrest does not

15  violate the Fourth Amendment, however, if the officers had probable cause to believe the

16  individual had committed or was about to commit a crime.  See Picray, 138 F.3d at 770.

17  Probable cause is determined at the time the arrest is made.  See Allen, 73 F.3d at 236.  Probable

18  cause is an objective inquiry and exists when, under the totality of the circumstances, the agents

19  know reasonably trustworthy information sufficient to warrant a prudent person in believing that

20  the accused had committed or was committing an offense.  See Beier, 354 F.3d at 1065; Allen,

21  73 F.3d at 237.

22       Here, the allegations in the complaint show that Plaintiffs' vehicle was pulled over and

23  that Warkentine stayed in the vehicle the entire time until he was handcuffed and moved to the

24  police vehicle.  The complaint does not indicate probable cause or even reasonable suspicion to

25  believe that Warkentine was committing or had committed a crime.  Warkentine was eventually

26  released and allowed to leave the scene with the pick-up truck, but the allegations indicate that he

27

28                                        20

was certainly seized.  Viewing the allegations in the complaint as true and in the light most favorable to Warkentine, the allegations are sufficient to show a violation of Warkentine's Fourth Amendment right to be free from unreasonable seizure.  Defendants' motion for judgment on the pleadings on the grounds that the complaint does not show a violation of Warkentine's rights should be denied with respect to claims for arrest/seizure without probable cause.

However, Defendants are correct that there is no indication in the SAC that Warkentine's other constitutional rights were violated.  As to Warkentine's claims under counts 1, 2, 3, 5, 6, 7, 8, 9, and 10 of the SAC, judgment on the pleadings in favor Defendants is appropriate.

## **CONCLUSION**

With respect to the arrest of Plaintiff Tankersley, the uncontroverted evidence shows at least a reasonable suspicion that Tankersley was speeding.  Since reasonable suspicion is all that is required to make a traffic stop under the Fourth Amendment, the initial detention was appropriate.  Additionally, the uncontroverted evidence shows that Tankersley did not obey Officer Mann's repeated commands to return to the cab of the pick-up while Mann was trying to investigate the traffic violation.  The repeated failure to comply with Mann's reasonable commands is sufficient to show probable cause to arrest for violation of California Penal Code § 148.  Thus, summary judgment as to Tankersley's claims under counts 4 and 11 of the SAC for false arrest and improper detention is appropriate.

With respect to Tankersley's claims for failure to take him to a magistrate, to the extent that the claim is based on California statutory law, the claim is not actionable under 42 U.S.C. § 1983.  To the extent Tankersley relies on the Fourth Amendment, Tankersley has failed to show that his detention of less than 48 hours was unreasonable or prejudicial.  Summary judgment is appropriate for Tankersley's claims under count 2 of the SAC.

With respect to Tankersley's claims for wrongful seizure of $60.00 and a pocket knife, since there was probable cause to arrest, the pocket knife was lawfully seized as a weapon

21

pursuant to a search incident to arrest under *Chimel*.  However, given the offenses involved, the $60.00 was neither evidence nor a weapon, so *Chimel* is not applicable.  Thus, summary judgment as to count 1 will be granted as to the pocket knife, but denied as to the $60.00.

With respect to the continued retention of the pocket knife and $60.00, Defendants do not adequately address the retention or taking of these items after the conclusion of the criminal proceeding against Tankersley.  Although there is some indication that Tankersley has not requested the return of his property, and thus, the claim is not ripe, that argument is not made by Defendants.  Summary judgment with respect to Officer Mann as to count 3 as argued by Defendants is thus, inappropriate.  However, the evidence does not show that there is a policy, practice or custom of unlawfully taking property.  Thus, summary judgment for Dos Palos is appropriate as to count 3.

Defendants have not specifically addressed or moved for judgment on counts 5, 6, 7, 8, 9, or 10.  Defendants do argue that there is insufficient evidence that the Defendants violated Plaintiffs' Sixth and Seventh Amendment rights.  This contention is correct and summary judgment on all claims of violations of the Sixth and Seventh Amendments is appropriate.  Additionally, Defendants are correct that claims of excessive force are governed by the Fourth Amendment and not the Fourteenth Amendment.  Summary judgment as to counts 6 and 7 for claims based on the Fourteenth Amendment is appropriate.

With respect to Plaintiff Warkentine, Defendants move for judgment on the pleadings.  Taking the allegations in the light most favorable to Warkentine, the pleadings indicate that Warkentine was arrested without probable cause in violation of the Fourth Amendment.  However, the pleadings show no other violations of Warkentine's rights.  Accordingly, judgment on the pleadings with respect to counts 1, 2, 3, 5, 6, 7, 8, 9, and 10 as to Warkentine is appropriate.

Finally, with respect to the City of Dos Palos, Plaintiffs' only claim involving a policy, practice, or custom is count 3.  The remaining counts do name the City, but fail to allege a policy,

practice, or custom.  Given the allegations in the complaint, Plaintiffs are essentially making

*respondeat superior* claims against the City.  Since a municipality cannot be held liable under §

1983 on *respondeat superior* theories, summary judgment in favor of the City is appropriate on

all claims.


## **ORDER TO SHOW CAUSE**

In the course of reviewing the papers submitted with respect to Defendants' motion for

summary judgment, there is an indication that Tankersley has failed to request the return of his

$60.00 and pocket knife through the appropriate channels.  This is an indication that the takings

claim in count 3 of the SAC is not ripe.  See Footnote 13, *supra*.  Ripeness is jurisdictional and

may be raised by the Court *sua sponte*.  See Southern Pacific Trans. Co. v. Los Angeles, 922

F.2d 498. 502 (9th Cir. 1990).  It is appropriate for Plaintiffs to show the ripeness of this claim.

Additionally, a review of the record indicates that named defendant Officer Brian Nunes

has not been served with the SAC and has not filed an answer or made an appearance in this

case.  Furthermore, although doe defendants were "named" within the SAC, the doe defendants

have not been identified by Plaintiffs and there is no indication that they have been served with

the SAC.  The Court, on its own motion, may dismiss a defendant who has not been served with

a complaint within 120 days of the filing of the complaint.  See Fed. R. Civ. Pro. 4(m).  It is

appropriate for Plaintiffs to show cause why Defendant Nunes and the doe defendants should not

be dismissed from this case.


Accordingly, IT IS HEREBY ORDERED that:

1.     Summary judgment as to counts 2 and 4 is GRANTED;

2.     Summary judgment as to count 1 is GRANTED with respect to claims involving

        the pocket knife and GRANTED with respect to claims involving the $60.00 and

        based on the Fifth, Sixth, Seventh and Fourteenth Amendments, but DENIED

23

with respect to the claim involving the $60.00 based on the Fourth Amendment;

3.     Summary judgment is DENIED as to Defendant Mann and claims in count 3 based on the Fifth Amendment;

4.     Summary judgment is GRANTED as to all claims by Plaintiffs based on violations of the Sixth and Seventh Amendments;

5.     Summary judgment is GRANTED as to claims in counts 6 and 7 based on the Fourteenth Amendment;

6.     Summary judgment for Defendant City of Dos Palos is GRANTED as to all claims;

7.     Judgment on the pleadings against Plaintiff Warkentin is DENIED with respect to counts 4 and 11 for claims of an illegal seizure/arrest based on the Fourth Amendment, but GRANTED as to all remaining claims by Plaintiff Warkentine;

8.     Plaintiff Tankersley is ordered to appear and show cause on May 27, 2005, at 8:30 a.m. why his claim under count 3 for violations of the Fifth Amendment should not be dismissed on the ground that the claim is not ripe; and

9.     Plaintiffs are ordered to appear and show cause on May 27, 2005, at 8:30 a.m. why named defendant Brian Nunes and the doe defendants should not be dismissed for failure to timely serve them with the Second Amended Complaint under Federal Rule of Civil Procedure 4(m).

IT IS SO ORDERED.

**Dated:    May 12, 2005**              _____/s/ Anthony W. Ishii_____
0m8i78                                         UNITED STATES DISTRICT JUDGE